Lorenzo SOTO and Veronica Vonderhaar, n/k/a Veronica Taylor, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants and Cross–Appellees,

v.

PROGRESSIVE MOUNTAIN INSURANCE COMPANY, a Colorado corporation, Defendant–Appellee and Cross–Appellant.

No. 05CA1032.

Colorado Court of Appeals, Div. IV.

July 26, 2007.

Certiorari Denied April 21, 2008.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2007.

The Carey Law Firm, Leif Garrison, Robert B. Carey, Colorado Springs, Colorado; Walter H. Sargent, P.C., Walter H. Sargent, Colorado Springs, Colorado, for Plaintiffs–Appellants and Cross–Appellees.

Baker & Hostetler LLP, John B. Moorhead, Stacy D. Mueller, Paul G. Karlsgodt, Denver, Colorado, for Defendant–Appellee and Cross–Appellant.

Opinion by Judge HAWTHORNE.

In this case under the former Colorado Auto Accident Reparations Act (No–Fault Act), plaintiffs, Lorenzo Soto and Veronica Vonderhaar, now known as Veronica Taylor (collectively insureds), appeal the partial summary judgment in favor of defendant, Progressive Mountain Insurance Company. Progressive cross-appeals the trial court's grant of class certification. We dismiss Progressive's cross-appeal, reverse the judgment, and remand the case for further proceedings.

## I. Background

In 1999, each insured was involved in an automobile accident while covered under insurance policies issued by Progressive. The insureds filed claims for compensation for personal injury protection (PIP) benefits available under their respective policies.

In 2002, the insureds filed suit against Progressive under the No–Fault Act, alleging that Progressive failed to offer the enhanced PIP benefits as required by former § 10–4–710(2)(a), Colo. Sess. Laws 1992, ch. 219 at 1779 (entire act repealed effective July 1, 2003, Colo. Sess. Laws 2002, ch. 189, § 10–4–726 at 649), in effect at the time the policies were issued. The insureds further alleged that Progressive failed to provide written explanations of all available coverages as required by former § 10–4–706, Colo. Sess. Laws 1973, ch. 94, § 13–25–6 at 336. The insureds also filed a motion for class certification, which the trial court granted after a narrowing of the class definition.

Progressive then moved for summary judgment on all the insureds' claims, stating that it had offered the enhanced benefits. The trial court granted partial summary judgment as to the insureds' claims arising under former § 10–4–710, but allowed the insureds' claims arising under former § 10–4–706 to go forward. Upon the parties' joint motion, the trial court entered an order pursuant to C.R.C.P. 54(b), allowing these appeals to proceed.

In May 2006, the motions division of this court issued an order to Progressive to show cause why its cross-appeal should not be dismissed for failure timely to request review, pursuant to § 13–20–901, C.R.S.2006, of the trial court's order granting class certification. The ruling on the order was then deferred to this division. Because of the procedural posture of this case, we first address the show cause order and the timeliness of Progressive's cross-appeal.

## II. Show Cause Order and cross-appeal

■ The current rule regarding appeals from rulings on class certification became effective July 1, 2003, and requires that such an appeal be filed within ten days after entry of the trial court's order. Section 13–20–901(1), C.R.S.2006; C.R.C.P. 23(f). Because this case was filed in 2002, C.R.C.P. 54(b) applies.

C.R.C.P. 54(b) creates an exception to the general rule that only final judgments are appealable. In a case involving more than one claim for relief, the court "may direct the entry of a final judgment as to one or more but fewer than all of the claims ... only

upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." C.R.C.P. 54(b).

■ The court must employ a three-step process in deciding whether to issue a C.R.C.P. 54(b) certification. *Harding Glass Co. v. Jones,* 640 P.2d 1123, 1125 (Colo.1982).

First, it must determine that the decision to be certified is a ruling upon an entire "claim for relief." Next, it must conclude that the decision is final "in the sense of an ultimate disposition of an individual claim." Finally, the trial court must determine whether there is just reason for delay in entry of a final judgment on the claim.

*Harding Glass, supra,* 640 P.2d at 1125 (citations omitted; quoting *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)). We review the first two steps de novo and the third step for an abuse of discretion. *See Pham v. State Farm Mut. Auto. Ins. Co.,* 70 P.3d 567, 571 (Colo.App.2003).

We conclude that the trial court's order granting class action certification is not an ultimate disposition of an individual claim. *See Harding Glass, supra,* 640 P.2d at 1125. While an order denying class certification may be appealed, *see Levine v. Empire Sav. & Loan Ass'n,* 192 Colo. 188, 189–90, 557 P.2d 386, 387 (1976), we can find no Colorado cases, and Progressive cites to none, that hold an order *granting* class certification is subject to interlocutory appeal based on a C.R.C.P. 54(b) certification. A grant of class certification does not dispose of any claims. As in the case of a denial of summary judgment, it merely allows the claims to proceed. *Cf. Feiger, Collison & Killmer v. Jones,* 926 P.2d 1244, 1247 (Colo.1996) (denial of motion for summary judgment not appealable because it "is strictly a pretrial order that decides only one thing—that the case should go to trial" (quoting *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966)) ).

■ Nor are we persuaded by Progressive's argument that the trial court's C.R.C.P. 54(b) certification must be considered as a whole, and that failure of certification as to one issue requires reversal of the certification in its entirety. We conclude that certification of the order granting partial summary judgment was proper, because it disposed of the insureds' claims for declaratory judgment and breach of contract, and the parties stipulated that the remaining C.R.C.P. 54(b) requirements were met for both issues. However, the parties' stipulation does not confer on us jurisdiction to review an otherwise unreviewable order. *See Harding Glass, supra,* 640 P.2d at 1126 (appellate court's jurisdiction to entertain appeal of a certified decision dependent upon correctness of the certification).

We conclude the trial court's C.R.C.P. 54(b) certification of its order granting class action certification as a final judgment was improper. Accordingly, the order to show cause is discharged, and Progressive's cross-appeal is dismissed.

### III. Appeal

■ Insureds contend that the trial court erred in granting summary judgment in favor of Progressive on their claims under § 10–4–710. We agree.

■ Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." C.R.C.P. 56(c). We review a trial court's grant of summary judgment de novo. *Snipes v. Am. Family Mut. Ins. Co.,* 134 P.3d 556, 558 (Colo.App.2006).

■ The question of statutory interpretation is one of law that we review de novo. *Colo. State Bd. of Accountancy v. Paroske,* 39 P.3d 1283, 1286 (Colo.App.2001). "Our primary task in construing a statute is to determine and give effect to the intent of the legislature." *Harding v. Heritage Health Prods. Co.,* 98 P.3d 945, 947 (Colo. App.2004). When interpreting a statute, we are required to give effect to all its parts and avoid interpretations that render statutory provisions superfluous. *Wolford v. Pinnacol*

*Assurance,* 107 P.3d 947, 951 (Colo.2005); *Jefferson County Bd. of County Comm'rs v. S.T. Spano Greenhouses, Inc.,* 155 P.3d 422, 424–25 (Colo.App.2006).

Section 10–4–710(2)(a), which was in effect at the time Progressive issued its policies and at the time of the insureds' respective automobile accidents, states:

> (2)(a) Every insurer shall offer for inclusion in a complying policy, in addition to the coverages described in section 10–4–706, *at the option of the named insured:*
>
> (I) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitation; or
>
> (II) Compensation of all expenses of the type described in section 10–4–706(1)(b) without dollar or time limitations and payment of benefits equivalent to eighty-five percent of loss of gross income per week from work the injured person would have performed had such injured person not been injured during the period commencing on the day after the date of the accident without dollar or time limitations.

Colo. Sess. Laws 1992, ch. 219 at 1779 (emphasis added).

The trial court concluded that the statute was clear and unambiguous and means "that the insured has the option of the basic PIP policy (§ [10]4706) and at least one of the enhanced options I or II, but not both." Because Progressive offered the insureds the enhanced benefits in § 10–4–710(2)(a)(I), the trial court concluded that Progressive was not required to offer the enhanced benefits in § 10–4–710(2)(a)(II).

The interpretation of this aspect of former § 10–4–710(2)(a) is one of first impression in Colorado. Federal district courts are split in their interpretations. *Compare Morris v. Travelers Indem. Co.,* (D.Colo. No. 05–cv–00727–EWN–BNB, July 10, 2006) (unpublished order and memorandum) (offer of additional PIP coverage must satisfy § 10–4–710(2)(a)(I) or (II) ), *with Breaux v. Am. Family Mut. Ins. Co.,* 387 F.Supp.2d 1154, 1161–62 (D.Colo.2005)(insurer required to offer extended PIP coverage in compliance with both § 10–4–710(2)(a)(I) *and* (II) ), *and Campbell v. Allstate Ins. Co.,* (D.Colo. No.

05cv01757, Feb. 14, 2007)(unpublished order)(same).

We conclude that former § 10–4–710(2)(a) is equally susceptible of two possible meanings: (1) the insurer is required to offer both types of enhanced benefits from which the insured may choose one, if any, and (2) the insurer need only offer one of the two enumerated types of enhanced benefits, and the insured may choose it or no enhanced benefits at all.

We therefore conclude the statute is ambiguous on its face and a review of legislative history and other material is appropriate to determine its meaning. *See Harding v. Heritage Health, supra,* 98 P.3d at 947.

## A. Legislative History

The transcript of the legislative committee hearings on former § 10–4–710(2)(a) provides ample evidence that the intent of the General Assembly was to require insurers to offer their insureds both enhanced PIP benefit options as set out in the statute.

Representative Killian, the bill's sponsor, stated that "Section 2 would reduce the required options *that must be printed out and offered to the potential insureds* to just two...." Hearings on H.B. 1175 before the H. Transportation Comm., 58th Gen. Assemb., 2d Sess. (Jan. 29, 1992) (emphasis added) (Hearings). Further, she testified that "the two options that [the insureds] ... *would be required to be offered* under the bill would be an option for medical benefits up to $200,000 or medical benefits plus wage loss up to $200,000." Hearings (emphasis added).

A representative of the National Association of Independent Insurers also supported Representative Killian's explanation of the intended effect of former § 10–4–710(2)(a), and testified that "the sole effect of [§ 10–4–710(2)(a) ] is to say that ... the options would be cut down to two options that *must be offered.*" Hearings (emphasis added).

Thus, the legislative history of former § 10–4–710(2)(a) clarifies the legislature's intent that insurers offer both enhanced PIP options to their insureds.

### B. Market Conduct Examination Reports

In the trial court, the insureds offered several market conduct examination reports prepared for and adopted by the Colorado Division of Insurance as evidence of that agency's interpretation of former § 10–4–710(2)(a).

Because the statute is subject to two different reasonable interpretations and the issue comes within an administrative agency's expertise, judicial deference to the agency's interpretation of the statute is appropriate. *Jefferson County Bd., supra,* 155 P.3d at 425.

The Division of Insurance has interpreted § 10–4–710(2)(a) as we do here, because insurers (not including Progressive) have been charged by the Colorado Commissioner of Insurance with violations of former § 10–4–710(2)(a) for not offering both options (I) and (II) to their insureds, and have been required to remedy the violations by doing so.

Our interpretation of the statute is bolstered by the fact that if one reads the statute to require only that insurers offer *either* option I or option II, the phrase, "at the option of the named insured" would be meaningless and superfluous, a result we must avoid. *See Wolford, supra,* 107 P.3d at 951; *Jefferson County Bd., supra,* 155 P.3d at 425.

An "offer" is "[t]he act or instance of presenting something for acceptance." *Black's Law Dictionary* 1112 (8th ed.2004). An "option" is "[t]he right or power to choose." *Black's, supra,* at 1126. Thus, to say that the insured has an option to accept an insurer's offer is redundant. We reject Progressive's contention that the "option" of the insured is between purchasing a policy with standard PIP benefits and purchasing a policy with the one type of enhanced PIP benefits the insurer chooses to offer.

Therefore, we conclude that former § 10–4–710(2)(a) required Progressive to offer both enhanced benefits options to its insureds. On remand, the trial court shall reinstate the insureds' claims under former § 10–4–710 for declaratory judgment and breach of contract.

### IV. Attorney Fees

■ We deny the insureds' request for an award of attorney fees under former § 10–4–708. *See* Colo. Sess. Laws 1973, ch. 94, § 13258 at 338 (formerly codified as amended at § 10–4–708).

■ Former § 10–4–708 provides for an award of attorney fees if an insurer fails to pay PIP benefits promptly when they are due. Any such award under the statute is at the trial court's discretion. *Brennan v. Farmers Alliance Mut. Ins. Co.,* 961 P.2d 550, 556–57 (Colo.App.1998).

■ In a case involving the improper exclusion of benefits from an insurance contract, additional PIP benefits do not become due until the contract is reformed to include them. *Brennan, supra,* 961 P.2d at 557. Because there was no such reformation of the insurance contracts in this case, no additional PIP benefits are due, and we thus conclude the insureds are not entitled to an award of attorney fees. *Goodwin v. Homeland Cent. Ins. Co.,* 172 P.3d 938, —— (Colo. App. 2007).

The cross-appeal is dismissed, the judgment is reversed, and the case is remanded for reinstatement of the insureds' claims for relief under former § 10–4–710, including declaratory judgment and breach of contract, and for further proceedings consistent with this opinion.

Judge VOGT concurs.

Judge GRAHAM specially concurs.

Judge GRAHAM specially concurring.

I concur in the result reached by the majority. However, I reach that result without reviewing the legislative history of § 10–4–710(2)(a). In attempting to discern the original meaning of the text of the statute at issue in this case, I would go no further than its language.

The text requires that insurers offer specified enhanced "benefits" and lists two alternative groups of benefits under subsections (I) and (II). The first benefit is a coverage which provides compensation for expenses of the type set forth in § 10–4–706(1)(b) without

any dollar or time limitation. The second benefit is coverage of those same expenses and payment of benefits for lost income. Although the statutory language is not a model of grammatical clarity, in my view the addition of the clause, "at the option of the insured," is meant to modify the clause, "for inclusion in a complying policy."

I therefore read the statute to mean that the insured shall have the option of including the benefits under subsection (I) or (II) in the policy.