STATE of Colorado, ex rel. John W. SUTHERS, Attorney General, and Laura E. Udis, Administrator, Uniform Consumer Credit Code, Plaintiffs–Appellants and Cross–Appellees,

v.

CB SERVICES CORPORATION, Defendant,

and

Concerning Paul Chessin, Senior Assistant Attorney General, Appellant and Cross–Appellee,

and

Michael W. Hicks, Appellee and Cross–Appellant.

No. 08CA2092.

Colorado Court of Appeals, Div. VI.

May 27, 2010.

Rehearing Denied Sept. 16, 2010.*

---

* Carparelli, J., would grant petition of plaintiffs- appellants.

**8**

John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Jan M. Zavislan, Deputy Attorney General, Denver,

Colorado, for Plaintiffs–Appellants; Cross–Appellees; Appellant; and Cross–Appellee.

Law Office of James E. Nesland, LLC, James E. Nesland, Aurora, Colorado; Cooley Godward Kronish LLP, Jeffrey A. Smith, Broomfield, Colorado, for Appellee and Cross–Appellant.

Opinion by Judge BERNARD.

This appeal arises from an action taken by the Attorney General (the State) to enforce the Uniform Commercial Credit Code and the Colorado Consumer Protection Act against CB Services Corporation (CBSC). We conclude that we lack jurisdiction over the issues raised in this appeal because the trial court has not entered final, appealable orders concerning them. Therefore, we dismiss the appeal and the cross-appeal without prejudice.

## I. Background

In a previous interlocutory appeal, a division of this court addressed whether Indian tribal sovereign immunity applied to two Internet companies. CBSC, which operated under the trade name Cash Advance, was one of them. *State ex rel. Suthers v. Cash Advance*, 205 P.3d 389 (Colo.App.2008)(*cert. granted* Apr. 13, 2009).

As pertinent here, in January 2005, the State issued an administrative subpoena to CBSC, requiring it to produce, among other items, documents describing its corporate structure and detailing its lending activities in Colorado. In February 2005, at the State's request, the trial court issued an order enforcing the administrative subpoena.

Because CBSC did not respond to the subpoena, the State asked the trial court, in June 2005, to issue a citation to CBSC and its "officers, directors, shareholders, members, principals, servants, employees, agents, attorneys, successors, heirs, and assigns, including its president, sole executive officer, and director James A. Fontano," to appear and show cause why they should not be held in contempt for failing to comply with the court's order enforcing its administrative subpoena. At the time, the State indicated that Mr. Fontano was CBSC's sole officer and director.

Neither CBSC nor Mr. Fontano appeared at the contempt hearing, which was held in March 2007. At that hearing, and at the State's request, the trial court issued a warrant for the arrest of Michael Hicks, who, the State had learned, was CBSC's sole officer and director. The trial court stayed the issuance of that warrant until the State could provide adequate identifying information for Mr. Hicks to be included in the warrant.

The State supplied that information in March 2008, the trial court issued the warrant, and Mr. Hicks was arrested in Missouri in April 2008. He promptly filed a motion to quash the warrant, stating that he had not received notice of the administrative subpoena, the order enforcing the administrative subpoena, the contempt citation, or the notice of advisement hearing filed in connection with the contempt citation.

After a hearing held in May 2008, the trial court quashed the arrest warrant because Mr. Hicks had not been personally served with the contempt citation. The court determined that the State had violated procedural due process standards and the procedures required by C.R.C.P. 107(c), and that the State had not been candid with the court. However, the court refused Mr. Hicks's request to enter an order stating that he could not in the future be held in contempt for failing to comply with the administrative subpoena should he be properly served with a contempt citation.

In a written order issued in August 2008, the court also entered, under C.R.C.P. 11, joint and several monetary sanctions of $12,500 against the State and the Senior Assistant Attorney General who had handled the contempt proceedings involving Mr. Hicks. The sanctions were imposed to reimburse Mr. Hicks for the attorney fees and costs he incurred in asking the court to quash the arrest warrant. The State, the Senior Assistant Attorney General, and Mr. Hicks agreed that the trial court would stay the enforcement of the sanctions order pending the outcome of this appeal.

The 2008 trial court proceedings concerning the State, the Senior Assistant Attorney General, and Mr. Hicks that form the basis for this appeal occurred after *State ex rel. Suthers v. Cash Advance* was appealed to this court.

The State now raises two claims concerning the 2008 proceedings involving Mr. Hicks. First, it contends that the trial court erred when it quashed the warrant for his arrest. Second, the State and the Senior Assistant Attorney General argue that the trial court's decision to impose sanctions against them was erroneous.

Mr. Hicks filed a cross-appeal. He claims that the trial court should have entered an order vacating the contempt citation and related orders concerning him, including the order requiring compliance with the administrative subpoena.

Given the apparent interlocutory nature of this appeal, we ordered the parties to show cause why we should not dismiss their claims for lack of jurisdiction.

## II. General Principles

"It is axiomatic that entry of a final judgment is a prerequisite to the right to prosecute an appeal." *Mission Viejo Co. v. Willows Water Dist.*, 818 P.2d 254, 258 (Colo. 1991). In the absence of a final judgment, we may not review interlocutory orders unless a statute or rule grants us that authority. *Id.; see* C.A.R. 1(a). Where there is no final judgment, we must take notice, even if the parties have not raised the issue. *Hait v. Miller*, 38 Colo.App. 503, 504, 559 P.2d 260, 261 (1977). The final judgment requirement is jurisdictional. Without a final judgment, we must dismiss the appeal. *Mission Viejo*, 818 P.2d at 258.

A final judgment is "one that ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceedings." *People v. Guatney*, 214 P.3d 1049, 1051 (Colo.2009). In deciding the finality of an order, we look to the legal effect of the order rather than to its form. *Levine v. Empire Sav. & Loan Ass'n*, 192

Colo. 188, 189, 557 P.2d 386, 387 (1976); *Luster v. Brinkman*, 250 P.3d 664, 666 (Colo. App.2010). Thus, for purposes of appeal, an order is final and appealable when it "finally disposes of the particular action and prevents further proceedings as effectually as would any formal judgment." *Levine*, 192 Colo. at 190, 557 P.2d at 387 (quoting *Herrscher v. Herrscher*, 41 Cal.2d 300, 304, 259 P.2d 901, 903 (1953)).

## III. Analysis

### A. Issues Raised by the State and the Senior Assistant Attorney General

#### 1. Quashing the Arrest Warrant

The State contends that the trial court erred in quashing the arrest warrant. We conclude that we do not have jurisdiction to resolve this claim in this appeal because this order does not constitute a final, appealable order.

An order *enforcing* a subpoena pursuant to a special statutory proceeding constitutes a final judgment because it disposes of the proceedings. *Bd. of Med. Exam'rs v. Duhon*, 844 P.2d 1312, 1313 (Colo.App.1992). In *Duhon,* the only relief that an administrative agency requested from the trial court was enforcement of its subpoena against an individual. *Id.* When the trial court granted that relief, there was nothing more for the trial court to do; the administrative agency's subpoena was enforced; and the individual had to comply with it. Hence, the enforcement order constituted a final judgment. *See also Charnes v. DiGiacomo*, 200 Colo. 94, 96, 612 P.2d 1117, 1118 (1980) (order denying motion to quash a subpoena appealable); *Wells Aircraft Parts Co. v. Allan J. Kayser Co.*, 118 Colo. 197, 199, 194 P.2d 326, 328 (1947) (order denying motion to quash service of summons appealable).

In contrast, "an order to quash, because it does not dispose of the proceedings, does not constitute a final judgment." *Duhon*, 844 P.2d at 1313. Orders quashing or striking do not qualify as final judgments because they are "simply interlocutory and do not finally resolve the issues in the case." *Colo. State Bd. of Accountancy v. Arthur*

*Andersen LLP*, 116 P.3d 1245, 1249–50 (Colo. App.2005) (discussing why the quashing of a subpoena is not a final judgment).

In a variety of legal contexts, Colorado courts have held that orders to quash or to strike do not qualify as final judgments. *People ex rel. Orcutt v. Dist. Court*, 164 Colo. 385, 393, 435 P.2d 374, 378 (1967) (order quashing ·subpoena was proper subject for original proceeding because, as interlocutory order, it was not a final judgment reviewable by writ of error); *Hoen v. Dist. Court*, 159 Colo. 451, 455, 412 P.2d 428, 430 (1966)(order quashing service of process is not a final judgment); *Latimer Constr. Co. v. Cram*, 152 Colo. 533, 534, 383 P.2d 315, 316 (1963) (order striking all bench warrants is not a final judgment); *Duhon*, 844 P.2d at 1313(order quashing a subpoena is not a final judgment).

Therefore, because the State appeals the trial court's decision to *quash* the bench warrant, not to *enforce* a subpoena, that order is not a final, appealable order. Indeed, the trial court left open the possibility that, in a future proceeding, Mr. Hicks could be held in contempt.

The State argues that it would "pre-judge" the merits of this appeal if it were now to comply with the trial court's procedural requirement of serving Mr. Hicks with a contempt citation, or if it were to restart the discovery process. This argument has no bearing on whether there is a final judgment on this issue, because the imposition of a procedural burden does not inevitably result in a final judgment. *See, e.g., People v. Cochran*, 176 Colo. 364, 367, 490 P.2d 684, 685 (1971)(an order granting a motion for a new trial is not a final judgment); *Orcutt*, 164 Colo. at 389, 393, 435 P.2d at 376, 378 (a final judgment still existed where the trial court improperly required administrative agency to serve defendants by regular process in order to make defendants comply with a subpoena); *Groendyke Transp., Inc. v. Dist. Court*, 140 Colo. 190, 194, 343 P.2d 535, 537 (1959)(trial court's order for intervention is interlocutory); *Things Remembered, Inc. v. Fireman's Ins. Co.*, 924 P.2d 1089, 1090–91 (Colo.App.1996)(an order granting a stay is not a final appealable

order); *Norby v. Charnes*, 764 P.2d 407, 408 (Colo.App.1988)(dismissal of a complaint without prejudice is generally not a final and appealable order; plaintiff could simply refile).

The State also argues that we have jurisdiction over this issue because the trial court's order effectively terminates the proceedings. We disagree because a similar argument was made in *Hoen*, and our supreme court rejected it. *Hoen*, 159 Colo. at 454, 412 P.2d at 429.

### 2. Sanctions

■ The State and the Senior Assistant Attorney General contend that the trial court erred when it imposed joint and several sanctions against them under C.R.C.P. 11. We conclude that we do not have jurisdiction to resolve this claim in this appeal because this order does not constitute a final, appealable order.

The State and the Senior Assistant Attorney General argue that, because the bench warrant was properly issued, no procedural due process violation occurred, and the award of monetary sanctions was, therefore, unwarranted.

In *State Farm Fire & Casualty Co. v. Bellino*, 976 P.2d 342, 343–44 (Colo.App. 1998), a division of this court held that sanctions awarding attorney fees pursuant to C.R.C.P. 11 and section 13–17–102, C.R.S. 2009, did not constitute separate claims for relief certifiable under C.R.C.P. 54(b) as final orders for purposes of appeal. Turning to federal case law for guidance, the *Bellino* division noted that, because sanctions do not resolve any substantive claims for relief, trial courts cannot certify sanction orders as final judgments under C.R.C.P. 54(b). *Id.* at 344.

The division also stated:

[T]here is no need to allow interlocutory sanction orders to be appealed in a piecemeal fashion, thereby cluttering appellate courts. Allowing appeals from sanction orders before a judgment has been entered on the merits would discourage the trial court's use of an important disciplinary tool and could be abused by parties wishing to delay the judicial process. Further,

based on later events, a trial court may reconsider its sanction order, thereby obviating the need for an appeal.

*Id.* (citation omitted).

We recognize that we are not confronted by a trial court order certifying the sanctions for appeal under C.R.C.P. 54(b) in this case. However, we are convinced that the factual and legal circumstances here are so similar to those in *Bellino* that its reasoning should be applied. Thus, if a C.R.C.P. 11 sanctions order cannot justify appellate certification under C.R.C.P. 54(b), the order here is obviously not final for purposes of appeal.

We are further persuaded, as far as the sanctions order against the Senior Assistant Attorney General is concerned, by the United States Supreme Court's decision in *Cunningham v. Hamilton County*, 527 U.S. 198, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999), that the order is not final and appealable.

Before *Cunningham*, federal circuit courts of appeals were split on the question of whether sanction orders against nonparty attorneys issued under Fed.R.Civ.P. 37 were final and appealable. *See Sanders Assocs., Inc., v. Summagraphics Corp.*, 2 F.3d 394, 395–98 (Fed.Cir.1993) (collecting cases); *Appeal of Licht & Semonoff*, 796 F.2d 564, 568 (1st Cir.1986).

In *Cunningham*, an attorney who had been disqualified from representing her client because she was a material witness in the case was sanctioned under Fed.R.Civ.P. 37(a)(4) for a discovery abuse. 527 U.S. at 201–02, 119 S.Ct. 1915. The Supreme Court first observed that, ordinarily, a sanction order under Fed.R.Civ.P. 37 does not qualify as a final decision under federal law because it does not end the litigation on the merits. *Id.* at 204, 119 S.Ct. 1915.

However, the Court recognized that some federal circuit courts had concluded that sanction orders against attorneys who were no longer involved in the case could be reviewed under the collateral order doctrine. This doctrine had been adopted by federal courts in order to review "[t]hat small category ... [of] decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively un-

reviewable on appeal from the final judgment in the underlying action." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995).

The *Cunningham* Court declined to extend the collateral order doctrine to Fed.R.Civ.P. 37 orders sanctioning attorneys who were no longer a part of the case. Although it acknowledged that the sanction order was likely conclusive, the Court also observed that the evaluation of a sanction order often cannot be separated from the merits of the case. Even if the order could be separated from the merits, the Court stated it "consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral." *Cunningham*, 527 U.S. at 206, 119 S.Ct. 1915.

The Court disagreed with the argument that a sanction order against an attorney is effectively unreviewable after a final judgment in the underlying action is entered, noting that "[t]he effective congruence of interests between clients and attorneys counsels against treating attorneys like other nonparties for purposes of appeal." *Id.* at 207, 119 S.Ct. 1915. Essentially, an attorney is not harmed by the mere deferral of appellate review of a sanctions order. *Id.* at 208, 119 S.Ct. 1915 (citing *Eastern Maico Distribs., Inc. v. Maico–Fahrzeugfabrik, G.m.b.H.*, 658 F.2d 944, 949–50 (3d Cir. 1981)).

The Court also stated that reviewing a Fed.R.Civ.P. 37(a) sanction order under the collateral order doctrine could

- open the door to delaying and harassing tactics;

- undermine a trial court's discretion to structure a sanction in the most effective manner, with the risk that trial courts may not sanction attorneys just to avoid delays in the proceeding; and

- significantly delay a case, "as each new sanction would give rise to a new appeal" and "[t]he result might well be the very sorts of piecemeal appeals and concomitant delays that the final judgment rule was designed to prevent."

*Id.* at 208–09, 119 S.Ct. 1915.

Because federal appellate jurisdiction depends upon similar notions of finality to those

that apply in Colorado, our supreme court has stated that we may consider federal cases assessing the finality of sanction orders as persuasive authority. *See Baldwin v. Bright Mortgage Co.,* 757 P.2d 1072, 1074 (Colo.1988). Therefore, we view *Cunningham* as persuasive, and we apply it here.

As a result of that application, we conclude that *Cunningham's* rationale buttresses our reliance on *Bellino,* especially concerning the Senior Assistant Attorney General. Although *Cunningham* dealt with a sanction under Fed.R.Civ.P. 37, it is persuasive authority here because there is no reason to differentiate between C.R.C.P. 37 and C.R.C.P. 11 for the purposes of determining whether, under the circumstances we face here, a sanctions order is final and appealable. *See Empresas Omajede, Inc. v. Bennazar–Zequeira,* 213 F.3d 6, 9 n. 4 (1st Cir. 2000); *Click v. Abilene Nat'l Bank,* 822 F.2d 544, 545 (5th Cir.1987); Georgene M. Vairo, *Rule 11 Sanctions* § 8.02 (3d ed.2004).

Our conclusion is supported by two additional grounds. First, the Senior Assistant Attorney General has not been disqualified from this case, and, therefore, unlike the attorneys in the federal decisions that *Cunningham* overruled, his status is not equivalent to that of a nonparty. Rather, his interests align with the State's, and he will be able to obtain review from a final judgment. Thus, the order imposing sanctions upon the State and the Senior Assistant Attorney General is not a final order for purposes of appeal. *See Kordich v. Marine Clerks Ass'n,* 715 F.2d 1392, 1393 (9th Cir.1983).

Second, the federal cases that *Cunningham* overruled relied on the collateral order doctrine. Even in *Cunningham's* absence, that doctrine would not succor the Senior Assistant Attorney General's argument, because our supreme court has concluded that it does not apply in Colorado in circumstances such as these.

> We have never held … that the federal collateral order exception, interpreting the meaning of "final decisions," as that term appears in 28 U.S.C. section 1291, is equally applicable to the interpretation of "final

judgments," as that term is used in C.A.R. 1(a) . . . .

*Paul v. People,* 105 P.3d 628, 631 (Colo.2005).

Following *Bellino's* and *Cunningham's* reasoning, we conclude that the sanctions imposed in this case under C.R.C.P. 11 are not final, appealable orders. The trial court's decision to impose those sanctions did not end the "particular action in. which it [was] entered." The rights of the parties in the underlying proceeding have not been completely determined. Indeed, until our supreme court decides the question of whether and how Cash Advance may be protected by the doctrine of Indian tribal sovereignty, such a determination cannot occur.

### B. Mr. Hicks's Issue

Mr. Hicks claims that the trial court erred when it failed to vacate the contempt citation and related orders concerning him, including the order requiring him to comply with the administrative subpoena. We conclude that we do not have jurisdiction to resolve this claim in this appeal because the trial court's refusal to grant the relief Mr. Hicks requested does not constitute a final, appealable order.

"For the purpose of appeal, an order deciding the issue of contempt and sanctions shall be final." C.R.C.P. 107(f). Therefore, trial court orders relating to contempt qualify as final if they decide (1) the issue of contempt and (2) whether sanctions are warranted. *See Madison Capital Co. v. Star Acquisition VIII,* 214 P.3d 557, 559–60 (Colo. App.2009) (finding a contempt order final and appealable where the trial court decided both the issue of contempt and sanctions); *Sec. Investor Prot. Corp. v. First Entm't Holding Corp.,* 36 P.3d 175, 178 (Colo.App. 2001)("[C.R.C.P.107(f) ] requires that, to constitute a final order, the determination of sanctions must be completed.").

Here, the trial court has not entered a judgment of contempt or ordered sanctions against Mr. Hicks. Therefore, there is presently no order or judgment involving Mr. Hicks that qualifies as a final, appealable order.

Because the orders that are the subject of this appeal are not final and appealable, we do not have jurisdiction to resolve them.

Therefore, this appeal is dismissed without prejudice.

Judge CARPARELLI and Judge LOEB concur.